# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | **)** |
| | **)** |
| Plaintiff, | **)** |
| | **)** CASE NO. 2:17-cr-20033-JAR |
| | **)** |
| v. | **)** |
| | **)** |
| STEVEN D. LAVY, | **)** |
| | **)** |
| Defendant. | **)** |

---

## DEFENDANT STEVEN D. LAVY'S MOTION FOR ORDER GRANTING COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A); DECLARATION OF GABRIEL L. PARDO & EXHIBIT A

---

TO: UNITED STATES ATTORNEY STEPHEN R. MCALLISTER AND ASSISTANT UNITED STATES ATTORNEYS TRISTRAM W. HUNT AND JARED S. MAAG:

Please take notice that Defendant Steven D. Lavy, by and through his undersigned counsel of record, hereby moves the Court for an order granting compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). This motion is based on the attached Memorandum of Points and Authorities, the Declaration of Gabriel L. Pardo and Exhibit A, all files and records in this case, and any additional evidence and argument that may be presented to the Court prior to ruling on the motion.

The requested relief is sought on an urgent basis, in light of the severe COVID-19 outbreak at Forrest City Low FCI (where Mr. Lavy is housed); Mr. Lavy's hypertension, which makes him uniquely susceptible to severe illness and death from COVID-19; and the failure of the Warden at Forrest City Low FCI to respond to Mr. Lavy's April 17, 2020, request for compassionate release.

//

//

//

//

//

For the above reasons and those discussed further herein, Mr. Lavy respectfully requests that the Court grant him compassionate release and reduce his sentence to time-served. The government opposes the requested relief. Mr. Lavy waives presence at any hearing that may be held on this motion and requests that any hearing be conducted telephonically

Respectfully submitted,

*/s/ John R. Humphrey*
John R. Humphrey, MO Bar NO. 34178
KS FED DIST CT Bar NO. 78413
Attorney for Defendant Steven Lavy
121 West 63rd Street, Suite 201
Kansas City, Missouri 64113
jhumphrey79@hotmail.com
PHN 816-333-2000
FAX 816-817-0880

*/s/ Gabriel L. Pardo*
Gabriel L. Pardo (Cal. Bar No. 261625)
Attorney for Defendant Steven Lavy
Admitted Pro Hac Vice
gpardo@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone:  (213) 232-5164
Facsimile:   (213) 232-5167

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   PROCEDURAL HISTORY ..................................................................... 3

III.  MR. LAVY SHOULD BE GRANTED COMPASSIONATE RELEASE ......... 4

   a.   The COVID-19 Outbreak at Forrest City Low FCI ............................ 4

   b.   Mr. Lavy Has Satisfied the Statutory Exhaustion Requirement ........... 8

   c.   The Severe Threat COVID-19 Poses to Mr. Lavy While Incarcerated Is An

   Extraordinary and Compelling Circumstance Justifying Compassionate Release ... 9

   d.   Mr. Lavy Is Not a Danger to The Community, And The Section 3553(a)

   Factors Support Compassionate Release ............................................... 13

IV.   CONCLUSION ..................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**

*Ortuno, et al., v. Jennings, et al.*
No. 20-CV-02064-MMC, 2020 WL 1866122 (N.D. Cal. Apr. 14, 2020) ............... 5

*United States v. Alam*
No. 15-20351, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020) .................................. 9

*United States v. Al-Jumail*
No. 12-20272, 2020 WL 2395224 (E.D. Mich. May 12, 2020) ............................. 11

*United States v. Amarrah*
No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) ............................... 15

*United States v. Boyles*
No. 18-20092-JAR, 2020 WL 1819887 (D. Kan. Apr. 10, 2020) ........................... 9

*United States v. Campagna*
No. 16 CR. 78-01 (LGS), 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020) .............. 12

*United States v. Colvin*
No. 3:19CR179 (JBA), 2020 WL 1613943 (D. Conn. Apr. 2, 2020) ..................... 11

*United States v. Gonzalez*
No. 2:18-CR-0232-TOR-15, 2020 WL 1536155
(E.D. Wash. Mar. 31, 2020) ........................................................................ 6, 10, 12

*United States v. Pena*
No. 15-CR-551 (AJN), 2020 WL 2301199 (S.D.N.Y. May 8, 2020) ............. 2, 5, 14

*United States v. Perez*
No. 17 CR. 513-3 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) ............... 2, 11

*United States v. Reddy*
No. 13-CR-20358, 2020 WL 2320093 (E.D. Mich. May 11, 2020) ............... 11, 15

*United States v. Resnick*
No. 14 CR 810 (CM), 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020) ...................... 12

*United States v. Rodriguez*
No. 2:03-CR-00271-AB-1, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) ......... passim

*United States v. Sawicz*
  No. 08-CR-287 (ARR), 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020)..............2, 10

## STATUTES

18 U.S.C. § 3553(a) ................................................................................... 14

18 U.S.C. § 3582(c)(1)(A)...............................................................2, 8, 9, 13

P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018)................................. 8

PL 98-473 (HJ Res 648), PL 98 473, 98 Stat 1837 (Oct. 12, 1984) ........................ 8

## OTHER AUTHORITIES

U.S.S.G. § 1B1.13 ................................................................10, 11, 12, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendant Steven D. Lavy is six months away from completing the four-year sentence this Court imposed following his guilty plea to bank robbery.  He looks forward to restarting his life and reconnecting with his family and community, with proper medical treatment for his bipolar disorder.  Tragically, events that could not have been foreseen have now dramatically altered the likely consequences of Mr. Lavy's sentence.  The United States is currently battling a once-in-a-generation fight against a deadly virus, which causes a disease known as COVID-19.  Because of COVID-19, there is now a substantial risk that Mr. Lavy will not make it out of the institution in which he is currently incarcerated, Forrest City Low FCI.  To date, **more than 300 inmates at Forrest City Low FCI have tested positive for COVID-19**.

As a long-time sufferer from hypertension, Mr. Lavy is uniquely susceptible to severe complications from COVID-19, should he contract this highly contagious disease.  He faces a substantial risk of death.  And the exponentially growing COVID-19 outbreak at Forrest City Low FCI demonstrates that it is not a matter of if, but when the disease makes its way to Mr. Lavy.  Given the cramped quarters at the institution, and the high transmissibility of COVID-19, it is simply a matter of time.

//

//

1

In recognition of the danger he faces, Mr. Lavy submitted—through counsel—a request to the Warden at Forrest City Low FCI seeking compassionate release.  Mr. Lavy's request was submitted on April 17, 2020; to date, there has been no response.  *See* Declaration of Gabriel L. Pardo ("Pardo Dec."), ¶ 4 & Ex. A.  Because more than 30 days have elapsed since Mr. Lavy submitted his request to the Warden, he is now empowered to bring his request for compassionate release directly to this Court.  *See* 18 U.S.C. § 3582(c)(1)(A).

Courts across the country have issued important rulings confirming that the COVID-19 pandemic is an "extraordinary and compelling reason" for granting compassionate release to uniquely at-risk individuals like Mr. Lavy.  *See, e.g.*, *United States v. Pena,* No. 15-CR-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) (granting compassionate release to defendant suffering from hypertension; "This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension, like Mr. Pena."); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (granting compassionate release and noting that "the defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his hypertension"); *United States v. Perez*, No. 17 CR. 513-3 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) (granting reduction in sentence to prisoner at high risk of severe complications from COVID-19); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL

1627331, at \*7 (E.D. Pa. Apr. 1, 2020) (granting reduction in sentence to prisoner who "suffers from underlying health conditions that render him especially vulnerable to COVID-19").

Mr. Lavy respectfully requests that this Court, like those cited above, recognize the urgent and dangerous nature of his current situation and take quick action to ensure his health and survival. Mr. Lavy should be granted compassionate release and his sentence should be reduced to time-served.

## II. __PROCEDURAL HISTORY__

Mr. Lavy pleaded guilty to bank robbery on January 22, 2019. *See* Dkt. #s 42-43 (minutes of change of plea). Mr. Lavy's offense conduct involved taking $782 from a Bank of the West branch, while wearing a disguise and carrying a pellet gun. Mr. Lavy was apprehended shortly after the robbery, following a police pursuit. *See generally* Dkt. # 45 (Presentence Report), ¶¶ 7-13.

On October 10, 2019, the Court sentenced Mr. Lavy to 48 months' imprisonment. *See* Dkt. # 54 (Judgment and Commitment Order). At sentencing, the Court considered extensive evidence presented by Mr. Lavy regarding his struggles with bipolar disorder, including an expert report discussing the role his condition likely played in his offense conduct. *See* Dkt. # 49 (Mr. Lavy's Sentencing Memorandum). Considering the critical need for Mr. Lavy's treatment and medication to continue, the Court thoughtfully recommended that he be designated to

the Bureau of Prisons ("BOP") medical facility in Springfield, Missouri, "due to mental health conditions and proximity to family."  Dkt. # 54, at 2.  Notwithstanding the Court's recommendation, the BOP instead elected to house Mr. Lavy at Forrest City Low FCI in Forrest City, Arkansas.  Pardo Dec., ¶ 2.  Unfortunately, Forrest City Low FCI has at times failed to provide Mr. Lavy with proper medication.  *Id.* ¶ 3.

On April 17, 2020, defense counsel sent a letter to the Warden at Forrest City Low FCI requesting that a motion for compassionate release be filed on Mr. Lavy's behalf, in light of the rapidly accelerating COVID-19 outbreak at Forrest City Low FCI.  Pardo Dec., ¶ 4 & Ex. A.  The Warden has not yet responded to defense counsel's letter.  *Id.*

### III.  MR. LAVY SHOULD BE GRANTED COMPASSIONATE RELEASE

#### a.  The COVID-19 Outbreak at Forrest City Low FCI

On March 11, 2020, the World Health Organization ("WHO") characterized COVID-19 as a pandemic.[1]  On March 13, 2020, President Donald J. Trump proclaimed that the COVID-19 outbreak in the United States constitutes a national emergency.[2]  As of May 18, 2020, a total of 1,480,349 cases and 89,407 deaths have

---

[1] WHO, WHO Director-General's opening remarks at the media briefing on COVID-19 (March 11, 2020), *available at* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last accessed May 18, 2020).

[2] The White House, Proclamation on Declaring a National Emergency Concerning the

4

been reported in the United States.[3] **Most importantly for purposes of this motion, at least 300 inmates at Forrest City Low FCI—where Mr. Lavy is currently incarcerated—have now tested positive for COVID-19.**[4]

The COVID-19 outbreak at Forrest City Low FCI poses a severe threat to Mr. Lavy, in particular.  Mr. Lavy suffers from hypertension, requiring medication.  *See* Dkt. # 45 (Presentence Report), ¶ 54; Pardo Dec., ¶ 7.  The Centers for Disease Control and Prevention ("CDC"),[5] the WHO,[6] and numerous courts and commentators[7] have all recognized that individuals with hypertension face a

---

Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last accessed May 18, 2020).

[3] CDC, Cases in U.S., *available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated May 18, 2020) (last accessed May 18, 2020).

[4] *See* https://www.bop.gov/coronavirus/ (last accessed May 18, 2020); Pardo Dec., ¶ 6.a.

[5] *See* CDC, Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19), *available at* www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last updated May 15, 2020) (last accessed May 18, 2020) (noting that "[h]eart disease, hypertension, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased illness severity and adverse outcomes" from COVID-19).

[6] *See* WHO. Report on the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), at pg. 12 (February 28, 2020), *available at* www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf (noting that "[i]ndividuals at highest risk for severe disease and death" from COVID-19 include "those with underlying conditions such as hypertension . . . .").

[7] *See, e.g.*, *Pena*, 2020 WL 2301199, at *4 ("The Centers for Disease Control and Prevention has identified hypertension as a comorbidity that increases the likelihood of serious risk from COVID-19."); *Ortuno, et al., v. Jennings, et al.,* No. 20-CV-02064-MMC, 2020 WL 1866122, at *1 (N.D. Cal. Apr. 14, 2020) (noting that the

heightened risk of severe disease or death from COVID-19.  Mr. Lavy also suffers from bipolar I disorder and major depressive disorder, resulting in an immunocompromised state that further heightens his risk from COVID-19.[8]

"Social distancing"—as urged by medical professionals and the federal government—is impossible to achieve while Mr. Lavy is incarcerated at Forrest City Low FCI.  As District Judge Anita B. Brody simply and accurately put it, "[p]risons are tinderboxes for infectious disease" and "are ill-equipped to prevent the spread of COVID-19."  *Rodriguez*, 2020 WL 1627331, at *1, *8.  *See also United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020), at *2 ("Because it is impossible to practice social distancing or isolation in a jail setting, the pandemic will be devastating when it reaches jail populations.").

There is no better evidence of the inability to achieve social distancing in a jail setting than the BOP's utter failure to contain the spread of COVID-19 within its

---

CDC and "several medical studies have found persons with hypertension are at . . . higher risk" from COVID-19); Todd Neale, TCTMD, New Wuhan Data Confirm High Hypertension Rate in COVID-19 Deaths (April 10, 2020), *available at* www.tctmd.com/news/new-wuhan-data-confirm-high-hypertension-rate-covid-19-deaths (last accessed May 18, 2020) ("The majority of patients who die of COVID-19 have at least one comorbidity, with hypertension being a frequent culprit, a case series confirms.").

[8] *See* CDC, Coronavirus Disease 2019 (COVID-19): People who are at higher risk for severe illness, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated May 14, 2020) (last accessed May 18, 2020) (noting that "[p]eople who are immunocompromised" are "at high-risk for severe illness from COVID-19").

institutions' walls.  The COVID-19 outbreak at Forrest City Low FCI has grown exponentially.  In just thirty days, the number of positive inmates has increased <u>more than eight-fold</u>.[9]  Forrest City is by no means an isolated case.  As of May 18, the COVID-19 outbreak at Lompoc FCI has resulted in over 900 inmate cases; the outbreak at Fort Worth FMC has resulted in over 600 inmate cases (with 9 inmate deaths); the outbreak at Terminal Island FCI has resulted in nearly 700 inmate cases (with 8 inmate deaths); the outbreak at Butner Medium I FCI has resulted in over 200 inmate cases (with 8 inmate deaths); and the outbreak at Elkton FCI has resulted in nearly 200 inmate cases (with 9 inmate deaths).[10]

There is good reason to believe that these numbers understate the true extent of the outbreaks within BOP institutions.  For example, as of March 29, the BOP reported a total of twelve cases at FCI Oakdale in Louisiana, while the Washington Post reported thirty-one.  *See Rodriguez*, 2020 WL 1627331, at *9 (citing this discrepancy and other facts and concluding that "[t]he BOP's reported cases are rapidly growing and almost certainly underestimate the true number of infections").  The same thing appears to be happening at Forrest City.  The BOP website identifies a total of 306

---

[9] *Compare* Pardo Dec., ¶ 6.a (noting BOP reports 253 COVID-19 positive inmates and 48 recovered inmates at Forrest City Low FCI as of May 18, 2020), *with* Pardo Dec., Ex. A, pg. 2 (letter sent to the Warden at Forrest City Low FCI on April 17, 2020, noting that, as of that date, there were a total of 35 positive inmates at Forrest City Low FCI).

[10] *See* https://www.bop.gov/coronavirus/ (last accessed May 18, 2020); Pardo Dec., ¶ 6.c-g.

inmate and 9 staff cases at the two Forrest City institutions (Forrest City Low FCI & Forrest City Medium FCI) as of May 18, 2020.[11]   A May 17, 2020, news article, however, states that more than 330 inmates and 17 staff members have tested positive at Forrest City.[12]

### b. Mr. Lavy Has Satisfied the Statutory Exhaustion Requirement

The compassionate release statute, first enacted as part of the Comprehensive Crime Control Act of 1984, granted district courts the authority to reduce a defendant's term of imprisonment where there are "extraordinary and compelling reasons" warranting such reduction.  In 1984, however, the Court had such authority only upon a motion of the Director of the BOP.  18 U.S.C. § 3582(c)(1)(A)(i); *see also* PL 98-473 (HJ Res 648), PL 98 473, 98 Stat 1837 (Oct. 12, 1984).  In 2018, Congress enacted the First Step Act, which amended Section 3582(c)(1)(A).  *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018).  As of December 2018, Section 3582(c)(1)(A) now permits a defendant to file a motion for compassionate release directly with the Court if: "(1) he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf, or (2) 30 days have passed since the warden of his facility

---

[11] *See* https://www.bop.gov/coronavirus/ (last accessed May 18, 2020); Pardo Dec., ¶ 6.a-b.

[12] Joseph Flaherty, Arkansas Democrat Gazette, Forrest City Prison's Outbreak Spreading Unease Outside the Walls (May 17, 2020), *available at* www.arkansasonline.com/news/2020/may/17/prison-s-outbreak-spreading-unease-outs (last accessed May 18, 2020).

received his request for the BOP to file a motion on his behalf." *United States v. Boyles*, No. 18-20092-JAR, 2020 WL 1819887, at *2 (D. Kan. Apr. 10, 2020) (quoting *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020)).

On April 17, Mr. Lavy, through counsel, transmitted a request to the Warden at Forrest City Low FCI to file a motion for compassionate release on his behalf. *See* Pardo Dec., ¶ 4 & Ex. A. Counsel previously followed this exact same procedure in submitting a request to a different institution, on behalf of a different inmate, and counsel received a response from the institution within nine days. *Id.*, ¶ 5. Here, however, more than 30 days have elapsed and neither counsel nor Mr. Lavy has received any response. *Id.*, ¶ 4. The lack of response is immaterial at this point, as Mr. Lavy is now expressly permitted to seek relief with this Court. *See* 18 U.S.C. § 3582(c)(1)(A); *Boyles*, 2020 WL 1819887, at *2.

### c. The Severe Threat COVID-19 Poses to Mr. Lavy While Incarcerated Is An Extraordinary and Compelling Circumstance Justifying Compassionate Release

This Court is empowered to grant a reduction in sentence (*i.e.*, compassionate release) if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In making this determination, the statute also instructs the Court to find that "such a reduction is consistent with applicable

9

policy statements issued by the Sentencing Commission." *Id.* The applicable policy statement from the Sentencing Commission is found in Section 1B1.13 of the United States Sentencing Guidelines. *See* U.S.S.G. § 1B1.13. This policy statement, however, has not been updated to account for the changes to Section 3582(c)(1)(A) enacted through the First Step Act and is thus "now clearly outdated." *Rodriguez*, 2020 WL 1627331, at *3. For this reason, "a majority of district courts have concluded that the old policy statement provides helpful guidance, but does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *Id.* at *4 (internal quotation marks and alterations omitted) (collecting cases).

In *Rodriguez*, the court considered a motion for reduction in sentence from a prisoner who, like Mr. Lavy, "suffers from underlying health conditions that render him especially vulnerable to COVID-19." *Id.* at *7. While acknowledging that these underlying conditions, in and of themselves, were not extraordinary, the court nonetheless concluded that "the confluence of COVID-19 and [these] health conditions . . . makes this circumstance extraordinary and compelling." *Id.* at *8; *see also Gonzalez*, 2020 WL 1536155, at *3 (granting compassionate release for 64-year-old defendant with COPD; noting that "[i]n normal times, Defendant's condition would be manageable" but "these are not normal times"); *Sawicz*, 2020 WL 1815851, at *2 (noting that "the defendant is at risk of suffering severe complications if he were

to contract COVID-19 because of his hypertension"; "While the defendant's hypertension does not place him squarely within any of the Policy Statement's definitions of 'extraordinary and compelling reasons' . . . the risk of serious illness or death that he faces in prison constitutes an extraordinary and compelling reason militating in favor of his release.").

Even if limited by the enumerated examples in Section 1B1.13, other courts have correctly concluded that the threat COVID-19 poses to uniquely susceptible individuals is consistent with the Sentencing Commission's policy statement. The commentary to the policy statement provides that a reduction may be warranted where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii). In *Perez*, the court found that a reduction in sentence was consistent with this commentary because "[c]onfined to a small cell where social distancing is impossible, Perez cannot provide self-care because he cannot protect himself from the spread of a dangerous and highly contagious virus." *Perez*, 2020 WL 1546422, at *4. *See also United States v. Al-Jumail,* No. 12-20272, 2020 WL 2395224, at *6 (E.D. Mich. May 12, 2020) (same); *United States v. Reddy*, No. 13-CR-20358, 2020 WL 2320093, at *7 (E.D. Mich. May 11, 2020) (same); *United States v. Colvin*, No. 3:19CR179 (JBA), 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020)

(same); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (same).

Other courts have held that a reduction in sentence for individuals uniquely susceptible to COVID-19 is consistent with the catch-all "other reasons" justification set forth at comment note 1(D). *See* U.S.S.G. § 1B1.13 comment n.1(D); *see also Gonzalez*, 2020 WL 1536155, at *2 (reduction in sentence for elderly prisoner with COPD "is best addressed under the 'other reasons' category"); *United States v. Resnick*, No. 14 CR 810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (citing comment note 1(D) and concluding that "Resnick's high susceptibility to COVID-19 falls within the purview of this catchall").

It is anticipated that the government will respond to this motion by pointing out various steps taken by the BOP to mitigate the spread of COVID-19 and arguing that these steps are sufficient to address any concerns regarding Mr. Lavy's health. But here, as in *Rodriguez*, "[t]he government's assurances that the BOP's 'extraordinary actions' can protect inmates ring hollow given that these measures have already failed to prevent transmission of the disease at the facility where Mr. [Lavy] is housed." *Rodriguez*, 2020 WL 1627331, at *8. The inescapable conclusion reached by Judge Brody in *Rodriguez* applies equally here: "The BOP cannot adequately protect Mr. [Lavy] from infection, especially in light of his vulnerability and the presence of COVID-19 in [Forrest City Low FCI]." *Rodriguez*, 2020 WL 1627331, at *9.

In sum, as in the above cases, the severe risk COVID-19 poses to Mr. Lavy, in combination with the accelerating outbreak at Forrest City Low FCI, constitute "extraordinary and compelling reasons" to reduce his sentence.

### d. Mr. Lavy Is Not a Danger to The Community, And The Section 3553(a) Factors Support Compassionate Release

In considering a motion for compassionate release, Congress has directed the Court to consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement also directs the Court to consider whether Mr. Lavy is "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). These considerations, on balance, weigh in favor of compassionate release.

While Mr. Lavy's crime was serious, he has suffered serious consequences. To date, he has been imprisoned for nearly three years. Prior to this, Mr. Lavy had never been incarcerated. *See* Dkt. # 45 (Presentence Report), ¶¶ 33-38. Moreover, as discussed at length in Mr. Lavy's Sentencing Memorandum, his offense was influenced by years of struggle with bipolar disorder. When properly medicated, Mr. Lavy's risk of recidivism is extremely low. *See generally* Dkt. # 49 (Mr. Lavy's Sentencing Memorandum and the accompanying report of Dr. Shawn L. Willson). Mr. Lavy also has sufficient financial resources and assistance to minimize any risk of contracting COVID-19 when he is released. Pardo Dec., ¶ 8.

13

Furthermore, the Section 3553(a) factors direct the Court to consider, *inter alia*, "the need for the sentence imposed . . . to provide the defendant with needed . . . medical care . . . in the most effective manner."  18 U.S.C. § 3553(a)(2)(D). The overarching directive of the statute is that a sentence must be "sufficient, but not greater than necessary" to comply with the purposes of sentencing.  *Id.*  These considerations weigh heavily in favor of compassionate release, and ultimately outweigh any remaining deterrent or punishment value that might be achieved by requiring Mr. Lavy to serve the remaining six months of his sentence.  *Cf. Pena*, 2020 WL 2301199, at *4 (granting compassionate release to defendant suffering from hypertension who had served only two-thirds of his sentence and had "helped orchestrate a violent armed robbery that terrorized multiple victims, including children").

The inescapable truth is this:  the BOP is unable to provide the type of care that medical experts (and indeed, the federal and state governments) agree is necessary in order for high-risk individuals like Mr. Lavy to avoid severe illness and death in the midst of this deadly pandemic.  Social distancing is simply not achievable while incarcerated.  The risk to Mr. Lavy is not merely hypothetical; it is *real and imminent*.  It is now clear that COVID-19 is spreading rapidly throughout Forrest City Low FCI.  In very short order, Mr. Lavy's four-year sentence may, for all intents and purposes, be converted to a death sentence.

14

Undoubtedly, this was not what the Court intended. *Cf. Rodriguez*, 2020 WL 1627331, at \*12 (observing that the original sentence "did not include incurring a great and unforeseen risk of severe illness or death"); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at \*6 (E.D. Mich. May 7, 2020) ("The Court sentenced Defendant to 60 months in prison; it did not sentence him to death or to incarceration that carries a significant risk of death.").

It is also clear that Forrest City Low FCI is not capable of reliably addressing Mr. Lavy's other legitimate medical needs. As the Court may recall, these medical needs are complex. *See* Dkt. # 49, Ex. A (Report of Dr. Shawn L. Willson), at pg. 10 (discussing medication recommendations). For this reason, the Court recommended that Mr. Lavy be designated to the BOP medical facility in Springfield, Missouri. Dkt. # 54, at 2. Mr. Lavy was instead designated to Forrest City Low FCI, a facility with no apparent special medical expertise. Demonstrating this fact, the institution inexplicably stopped giving Mr. Lavy his staple medication (lithium), forcing counsel to intervene. Pardo Dec., ¶ 3. Given the current pandemic, it is all the more important that Mr. Lavy be treated by Dr. Willson, who is familiar with his varied conditions and medication requirements, rather than BOP staff doctors. *Cf. Reddy*, 2020 WL 2320093, at \*8 (granting compassionate release in light of risk from COVID-19 and noting that "the most effective way to deliver medical care to Reddy is through her own network of private physicians who are intimately familiar with her conditions and

history and thus in the best position to provide the best care in the most efficient manner").

## IV.   **CONCLUSION**

At this very moment, Mr. Lavy faces a risk of severe illness or death, and this risk simply cannot be abated until he is removed from a prison setting and allowed to self-quarantine, as the government itself has directed at-risk individuals like Mr. Lavy to do.   For the foregoing reasons, Mr. Lavy respectfully requests that the Court issue an order reducing his sentence to time-served and ordering forthwith release.

Respectfully submitted,

*/s/ John R. Humphrey*
John R. Humphrey, MO Bar NO. 34178
KS FED DIST CT Bar NO. 78413
Attorney for Defendant Steven Lavy
121 West 63rd Street, Suite 201
Kansas City, Missouri 64113
jhumphrey79@hotmail.com
PHN 816-333-2000
FAX 816-817-0880

*/s/ Gabriel L. Pardo*
Gabriel L. Pardo (Cal. Bar No. 261625)
Attorney for Defendant Steven Lavy
Admitted Pro Hac Vice
gpardo@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone:  (213) 232-5164
Facsimile:  (213) 232-5167

16

## DECLARATION OF GABRIEL L. PARDO

I, Gabriel L. Pardo, declare as follows:

1.      I represent defendant Steven D. Lavy.  I am licensed to practice law in the State of California and I am admitted *pro hac vice* in this District for purposes of representing Mr. Lavy in this case.

2.      Mr. Lavy is currently housed at Forrest City Low FCI in Forrest City, Arkansas.  According to the Bureau of Prisons ("BOP") website, his projected release date is November 17, 2020.

3.      In January of this year, I was advised that Forrest City Low FCI had ceased providing Mr. Lavy with lithium.  As discussed in the report of Dr. Shawn L. Willson submitted with Mr. Lavy's Sentencing Memorandum (Dkt. # 49, Ex. A), regular lithium medication is essential to controlling Mr. Lavy's bipolar disorder. After multiple unsuccessful attempts to contact Forrest City Low FCI directly, I wrote to the BOP regional counsel who oversees Forrest City Low FCI, Mr. J.D. Crook.  I later spoke with Mr. Crook.  Mr. Lavy's lithium medication was resumed shortly thereafter.

4.      On April 17, 2020, I transmitted, via email, the letter attached hereto as Exhibit A, which is addressed to the Warden at Forrest City Low FCI.  My email was sent to the email address listed for Forrest City Low FCI on the BOP website (FOR/ExecAssistant@bop.gov).  I also emailed this letter to Mr. J.D. Crook, who I

17

am informed is the BOP's Consolidated Legal Center leader responsible for Forrest City Low FCI.  I also instructed my office to send a copy of this letter to the Warden via U.S. mail to the address provided for Forrest City Low FCI on the BOP website (1400 Dale Bumpers Road, Forrest City, Arkansas 72335).  As of the date of this declaration, neither Mr. Lavy nor anyone at my office has received any response to this letter, to the best of our knowledge.

5.     Previously, on behalf of a different inmate at a different BOP institution, I sent a request for compassionate release to the Warden via the exact same procedure (email to the email address listed on the BOP website and mail to the address listed on the BOP website).  Within nine days, I received a response from the Warden, via email, notifying me that my request had been received.

6.     On May 18, 2020, I reviewed the BOP website's page tracking the number of "COVID-19 Cases," found at www.bop.gov/coronavirus.  From my review of this website, I have learned the following:

      a.  At Forrest City Low FCI, the BOP reports 253 COVID-19 positive inmates; 1 positive staff member; 48 recovered inmates; and 2 recovered staff members.

      b.  At Forrest City Medium FCI, the BOP reports 3 COVID-19 positive staff members; 5 recovered inmates; and 3 recovered staff members.

18

    c. At Lompoc FCI, the BOP reports 885 COVID-19 positive inmates; 7 positive staff members; 44 recovered inmates; and 10 recovered staff members.

    d. At Fort Worth FMC, the BOP reports 295 COVID-19 positive inmates; 6 positive staff members; 9 inmate deaths; and 341 recovered inmates.

    e. At Terminal Island FCI, the BOP reports 117 COVID-19 positive inmates; 6 positive staff members; 8 inmate deaths; 575 recovered inmates; and 10 recovered staff members.

    f. At Butner Medium I FCI, the BOP reports 56 COVID-19 positive inmates; 6 positive staff members; 8 inmate deaths; 168 recovered inmates; and 20 recovered staff members.

    g. At Elkton FCI, the BOP reports 135 COVID-19 positive inmates; 8 positive staff members; 9 inmate deaths; 63 recovered inmates; and 44 recovered staff members.

7.    As noted in his Presentence Report, Mr. Lavy suffers from hypertension, for which he takes medication. *See* Dkt. # 45 (Presentence Report), ¶ 54. I have reviewed Mr. Lavy's medical records from the Leavenworth Detention Center and they confirm his hypertension diagnosis.

19

8.      Upon release, Mr. Lavy will secure temporary housing with the assistance of his attorney, Mr. Stephen A. Spataro.  Mr. Lavy's financial and health care needs will be covered by an existing disability insurance policy.  Mr. Lavy and Mr. Spataro will take appropriate precautions to minimize any risk of Mr. Lavy contracting COVID-19.

9.      I have communicated with counsel for the government, Assistant United States Attorney ("AUSA") Tris Hunt.  AUSA Hunt informed me that the government opposes Mr. Lavy's motion for compassionate release.

10.     Mr. Lavy waives his presence at any hearing on this matter.

I declare under penalty of perjury that the foregoing is true and correct.


*/s/ Gabriel L. Pardo*
Gabriel L. Pardo (Cal. Bar No. 261625)
Attorney for Defendant Steven Lavy
Admitted Pro Hac Vice
gpardo@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone:  (213) 232-5164
Facsimile:   (213) 232-5167

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 19, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Mr. Tris Hunt
Assistant United States Attorney
tris.hunt@usdoj.gov

Mr. Jared S. Maag
Assistant United States Attorney
jared.maag@usdoj.gov

> */s/ John R. Humphrey*
> John R. Humphrey, MO Bar NO. 34178
> KS FED DIST CT Bar NO. 78413
> Attorney for Defendant Steven Lavy
> 121 West 63rd Street, Suite 201
> Kansas City, Missouri 64113
> jhumphrey79@hotmail.com
> PHN 816-333-2000
> FAX 816-817-0880