IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) CASE NO. 2:17-cr-20033-JAR <br> ) <br> v. ) <br> ) <br> STEVEN D. LAVY, ) <br> ) <br> Defendant. ) | |

**DEFENDANT STEVEN D. LAVY'S REPLY IN SUPPORT OF MOTION FOR ORDER GRANTING COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A); SUPPLEMENTAL DECLARATION OF GABRIEL L. PARDO & EXHIBIT B; DECLARATION OF STEPHEN A. SPATARO**

Defendant Steven D. Lavy, by and through his counsel of record, hereby submits this reply in support of his motion for an order granting compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). This reply is based on the attached memorandum of points and authorities, the accompanying Supplemental Declaration of Gabriel L. Pardo & Exhibit B, the accompanying Declaration of Stephen A. Spataro, all files and records in this case, and any further information as may be presented to the Court.

Respectfully submitted,

*/s/ John R. Humphrey*
 John R. Humphrey, MO Bar NO. 34178
 KS FED DIST CT Bar NO. 78413
 Attorney for Defendant Steven Lavy
 121 West 63rd Street, Suite 201
 Kansas City, Missouri 64113
 jhumphrey79@hotmail.com
 PHN 816-333-2000
 FAX 816-817-0880

*/s/ Gabriel L. Pardo*
 Gabriel L. Pardo (Cal. Bar No. 261625)
 Attorney for Defendant Steven Lavy
 Admitted Pro Hac Vice
 gpardo@cohen-williams.com
 COHEN WILLIAMS LLP
 724 South Spring Street, 9th Floor
 Los Angeles, CA 90014
 Telephone: (213) 232-5164
 Facsimile: (213) 232-5167

## I.  INTRODUCTION

In the eight days since Mr. Lavy filed his motion for compassionate release with this Court, the number of COVID-19-positive inmates at Forrest City Low FCI—where Mr. Lavy is incarcerated—increased by 188, leaping from 253 active cases to 441 active cases.  This represents **a 74% increase in just over one week**.  Forrest City Low FCI now has the greatest number of active cases among all Bureau of Prisons ("BOP") institutions.[1]  These simple and powerful facts demonstrate the rapidity with which this disease moves; the abject failure of the BOP's mitigation policies at this institution; and the inevitability of infection should Mr. Lavy remain incarcerated at Forrest City Low FCI for the remaining six months of his sentence.[2]

And make no mistake, an infection for Mr. Lavy is likely to have severe—and perhaps deadly—consequences.  The government's opposition downplays this risk, selectively relying on portions of the Centers for Disease Control and Prevention ("CDC") website to suggest that hypertension is not a serious risk factor.  But the government ignores other pages of the CDC website that suggest the opposite, as well as guidance from the World Health Organization and numerous studies and court opinions—some cited in Mr. Lavy's motion, and many more cited herein—concluding

---

[1] *See* https://www.bop.gov/coronavirus/ (last accessed May 27, 2020); Supplemental Declaration of Gabriel L. Pardo, ¶ 3.

[2] Defense counsel understands that Mr. Lavy recently tested negative for COVID-19. Supplemental Declaration of Gabriel L. Pardo, ¶ 4.

that hypertension is, indeed, a significant risk factor. Moreover, the government's argument ignores Mr. Lavy's bipolar disorder, which would add substantial complexity to his treatment if he were to contract the virus.

The government also incorrectly asserts that Mr. Lavy presented no release plan. As the declaration of counsel accompanying Mr. Lavy's motion attested, Mr. Lavy's attorney, Stephen A. Spataro, will assist Mr. Lavy in securing temporary housing. *See* Dkt. # 57, Declaration of Gabriel L. Pardo, ¶ 8. To avoid any doubt on the matter, Mr. Spataro submits a declaration herewith further elaborating on Mr. Lavy's release plan. The most important aspect of Mr. Lavy's release plan, however, is this: it will remove him from a close-quarters environment in which the outbreak of a highly-contagious deadly disease is rapidly accelerating.

In six months, Mr. Lavy will complete serving the four-year sentence this Court imposed. He seeks to ensure that this remaining six-month term is not inadvertently converted into a death sentence (or, for that matter, a sentence that requires him to endure an extremely serious disease with unknown long-term health consequences). This is precisely the scenario compassionate release is designed for, and it should be granted here. Mr. Lavy's sentence should be reduced to time-served.

//

//

//

## II. MR. LAVY SHOULD BE GRANTED COMPASSIONATE RELEASE

The government correctly recognizes that Mr. Lavy has met the statutory exhaustion requirement. *See* Dkt. # 59 (government's opposition), at 9 (noting that the exhaustion requirement "appears to have been" met); *see also* 18 U.S.C. § 3582(c)(1)(A).[3] This Court is thus empowered to decide Mr. Lavy's motion for compassionate release. For the reasons set forth in Mr. Lavy's motion, compassionate release is warranted in this case. As discussed below, the narrow arguments the government makes in opposition to Mr. Lavy's motion are without merit.

//

//

---

[3] On April 17, 2020, Mr. Lavy submitted, through counsel, a request to the Warden at Forrest City Low FCI seeking compassionate release. *See* Dkt. #57, Declaration of Gabriel L. Pardo, ¶ 4 & Ex. A. At the time of filing Mr. Lavy's motion for compassionate release, counsel had not received a response from the Warden. *Id.* Subsequent to filing the motion, counsel received a response from the Warden via U.S. mail in which the Warden concludes that counsel's "concern about Steven D. Lavy being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from his sentence." *See* Supplemental Declaration of Gabriel L. Pardo, ¶ 2 & Ex. B. The Warden's denial of Mr. Lavy's request is immaterial at this point, given that more than 30 days have elapsed since the Warden received Mr. Lavy's request. *See* 18 U.S.C. § 3582(c)(1)(A) (allowing defendants to seek compassionate release from the courts after either the exhaustion of "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*") (emphasis added).

## a. Extraordinary and Compelling Reasons Justify Compassionate Release in This Case

In opposing Mr. Lavy's motion, the government commendably acknowledges that a chronic condition that "elevat[es] the inmate's risk of becoming seriously ill from COVID-19" can satisfy the statutory requirement of "extraordinary and compelling reasons." *See* Dkt. # 59 (government's opposition), at 14; *see also* 18 U.S.C. § 3582(c)(1)(A)(i). The government contends, however, that this standard is not met here because Mr. Lavy's "alleged compromised condition (hypertension) is not a condition identified by the CDC as increasing a person's risk for developing serious illness from COVID-19." *Id.*, at 15.

The government's argument lacks merit, for multiple reasons. First, as noted in Mr. Lavy's motion, the CDC *itself* acknowledges that hypertension has "been associated with increased illness severity and adverse outcomes" from COVID-19.[4] Second, and more importantly, the government offers no principled reason for limiting guidance on COVID-19—a disease new to the world, the study of which is in its infancy—to the CDC's opinion (let alone certain pages of its often contradictory

---

[4] CDC, Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19), *available at* www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last updated May 20, 2020) (last accessed May 27, 2020) (noting that "[h]eart disease, hypertension, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased illness severity and adverse outcomes" from COVID-19).

website). As also noted in Mr. Lavy's motion, the World Health Organization, numerous medical studies, and multiple courts have recognized that hypertensive individuals are at heightened risk of severe consequences from COVID-19. *See* Dkt. # 57 (Mr. Lavy's motion), at notes 6 & 7; *see also United States v. Pena,* No. 15-CR-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) ("This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension, like Mr. Pena."); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) ("[T]he defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his hypertension.").

The above authorities cited in Mr. Lavy's motion are merely the tip of the iceberg—numerous other courts have similarly recognized that hypertension increases the risk of severe outcomes from COVID-19, relying on expert medical studies and guidance. *See, e.g.*, *United States v. Mattingley*, No. 6:15-CR-00005, 2020 WL 2499707, at *3 (W.D. Va. May 14, 2020) ("Heart conditions like Mattingley's hypertension as well as diabetes are both identified by health experts as increasing one's susceptibility to COVID-19."); *United States v. Barber*, No. 6:18-CR-00446-AA, 2020 WL 2404679, at *4 (D. Or. May 12, 2020) ("It is well documented that hypertension issues are associated with increased risk of COVID-19 infection and worse outcomes in lung injury and mortality.") (citing studies); *United States v. Ullings*, No. 1:10-CR-00406, 2020 WL 2394096, at *4 (N.D. Ga. May 12, 2020) ("Ms.

5

Ullings presented an affidavit from Dr. Richard Goldberg, a former medical doctor who works as a medical consultant for the Justice Advocacy Group. He provided more authority for Ms. Ullings's contention that hypertension places her at a higher risk of becoming infected and developing more severe symptoms from the virus.") (citations omitted); *United States v. Valencia*, No. 15 CR. 163 (AT), 2020 WL 2319323, at *7 (S.D.N.Y. May 11, 2020) ("The Government does not dispute that Valencia suffers from a heart condition and hypertension, which are 'concerning with respect to COVID-19.'") (quoting government's brief); *United States v. Connell*, No. 18-CR-00281-RS-1, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020) ("The first large-scale study of its kind in the United States found '[o]lder persons, men, and those with pre-existing hypertension and/or diabetes' were the most prevalent among hospitalized COVID-19 patients.") (quoting S. Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area*, Journal of American Medicine (Apr. 22, 2020)); *United States v. Diep Thi Vo*, No. 15-CR-00310-BLF-2, 2020 WL 2300101, at *3 (N.D. Cal. May 7, 2020) ("[I]t is undisputed that Defendant suffers from hypertension, and it is well documented that hypertension is associated with increased risk of infection and worse outcomes in lung injury and mortality.") (collecting studies); *United States v. Reid*, No. 17-CR-00175-CRB-2, 2020 WL 2128855, at *3 (N.D. Cal. May 5, 2020) ("[T]he CDC reports that there is a 6% mortality rate for COVID-19 patients with

6

hypertension, compared with a 0.9% fatality rate for patients without any underlying condition."); *United States v. Pabon*, No. CR 17-165-1, 2020 WL 2112265, at *4 (E.D. Pa. May 4, 2020) ("Both diabetes and hypertension have been identified as 'specific comorbidities associated with increased risk of infection and worse outcomes.'") (quoting Ernesto L. Schiffrin et al., *Hypertension and COVID-19*, 33 American Journal of Hypertension 373, 373 (May 2020)); *United States v. Guzman Soto*, No. 1:18-CR-10086-IT, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) ("Defendant's medical records show that he suffers from hypertension. This condition increases his risk for serious complications from contracting COVID-19, including death."); *United States v. Coles*, No. 00-CR-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) ("The [CDC] has identified hypertension as a comorbidity that increases the likelihood of serious risk from COVID-19.").

\* \* \*

To the extent there is any uncertainty regarding the risk COVID-19 poses to hypertensives—and as the many cases cited above correctly note, there is not—the Court should err on the side of protecting Mr. Lavy's health and safety. Moreover, Mr. Lavy's mental health conditions should also be considered in the Court's analysis. While it is unclear, at this stage, whether and to what extent these conditions increase Mr. Lavy's risk of severe consequences from COVID-19, it *is* clear that these conditions are complex and require highly specialized care. *See generally* Dkt. # 49

(Mr. Lavy's Sentencing Memorandum and the accompanying report of Dr. Shawn L. Willson).

Were COVID-19 to be added to the list of Mr. Lavy's medical issues—as it inevitably will be should he remain at Forrest City Low FCI—his care will require expertise that simply is not available at Forrest City, as demonstrated by the fact that the medical staff there inexplicably took Mr. Lavy off of lithium for a period of time. *See* Dkt. #57, Declaration of Gabriel L. Pardo, ¶ 3. Here, as in *United States v. Reddy*, "the most effective way to deliver medical care to [Mr. Lavy] is through [his] own network of private physicians who are intimately familiar with [his] conditions and history and thus in the best position to provide the best care in the most efficient manner." *Reddy,* No. 13-CR-20358, 2020 WL 2320093, at *8 (E.D. Mich. May 11, 2020).

### b. Mr. Lavy Has a Viable Release Plan

The government objects that Mr. Lavy has not presented a release plan. Dkt. # 59 (government's opposition), at 15. The government is incorrect; as noted in Mr. Lavy's motion, he will work with his attorney, Stephen A. Spataro, to secure temporary housing. *See* Dkt. # 57, Declaration of Gabriel L. Pardo, ¶ 8. For the avoidance of any doubt, Mr. Spataro submits a declaration with this reply brief confirming this fact, and providing additional detail regarding Mr. Lavy's release plan—including that Mr. Lavy's brother is prepared to pick him up at Forrest City and

8

transport him back to Kansas City. Mr. Spataro will also assist Mr. Lavy in obtaining necessary psychiatric and medical care. *See generally* Declaration of Stephen A. Spataro.

The government makes this objection in an apparent effort to suggest that Mr. Lavy may be "more likely to contract COVID-19 if he is released than if he remains incarcerated." Dkt. # 59, at 14. This argument is, quite simply, absurd. Forrest City Low FCI currently houses at least 441 inmates with active (*i.e.*, non-recovered) cases of COVID-19. *See* www.bop.gov/coronavirus/; *see also* Supplemental Declaration of Gabriel L. Pardo, ¶ 3. This is the most severe active outbreak among all BOP institutions. *Id.* In the eight days between the filing of Mr. Lavy's motion and this reply, 188 additional inmate cases have been identified, representing a staggering 74% increase in just over one week. This is tragic, but ultimately unsurprising, because "[p]risons are tinderboxes for infectious disease" and "are ill-equipped to prevent the spread of COVID-19." *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1, *8 (E.D. Pa. Apr. 1, 2020). Right now, there are few places in the world that present a higher risk of COVID-19 infection than Forrest City Low FCI. Mr. Lavy will, without question, be less likely to catch the disease if he is released and allowed to self-quarantine in relative isolation, as he plans to do.

//

//

## III. CONCLUSION

Thankfully, it appears COVID-19 has not made its way to Mr. Lavy—yet. Supplemental Declaration of Gabriel L. Pardo, ¶ 4. But given the rapidity of the outbreak at Forrest City Low FCI and the high transmissibility of COVID-19, it is simply a matter of time before the inevitable occurs. Mr. Lavy respectfully requests that this Court act before it is too late and grant him compassionate release, reducing his sentence to time-served and ordering forthwith release.

Respectfully submitted,

*/s/ John R. Humphrey*
John R. Humphrey, MO Bar NO. 34178
KS FED DIST CT Bar NO. 78413
Attorney for Defendant Steven Lavy
121 West 63rd Street, Suite 201
Kansas City, Missouri 64113
jhumphrey79@hotmail.com
PHN 816-333-2000
FAX 816-817-0880

*/s/ Gabriel L. Pardo*
Gabriel L. Pardo (Cal. Bar No. 261625)
Attorney for Defendant Steven Lavy
Admitted Pro Hac Vice
gpardo@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5164
Facsimile: (213) 232-5167

# SUPPLEMENTAL DECLARATION OF GABRIEL L. PARDO

I, Gabriel L. Pardo, declare as follows:

1. I represent defendant Steven D. Lavy. I am licensed to practice law in the State of California and I am admitted *pro hac vice* in this District for purposes of representing Mr. Lavy in this case.

2. On May 22, 2020, my office administrator received via U.S. mail the letter attached hereto as Exhibit B, from the Warden at Forrest City Low FCI. The Warden's letter responds to my April 17, 2020, letter requesting that a motion for compassionate release be filed on Mr. Lavy's behalf. In response, the Warden writes that my "concern about Steven D. Lavy being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from his sentence."

3. On May 27, 2020, I reviewed the BOP website's page tracking the number of "COVID-19 Cases," found at www.bop.gov/coronavirus. From my review of this website, I have learned the following:

   a. At Forrest City Low FCI, the BOP reports 441 COVID-19 positive inmates; 1 positive staff member; 47 recovered inmates; and 3 recovered staff members.

   b. Forrest City Low FCI currently has the greatest number of "inmates positive" among BOP institutions. In other words,

Forrest City Low FCI has the greatest number of inmates who have (1) tested positive for COVID-19, and (2) are not classified as either recovered or dead.

4. Based on communications with Mr. Lavy, it is my understanding that Mr. Lavy recently tested negative for COVID-19.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Gabriel L. Pardo*
Gabriel L. Pardo (Cal. Bar No. 261625)
Attorney for Defendant Steven Lavy
Admitted Pro Hac Vice
gpardo@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5164
Facsimile: (213) 232-5167

# CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Mr. Tris Hunt
Assistant United States Attorney
tris.hunt@usdoj.gov

Mr. Jared S. Maag
Assistant United States Attorney
jared.maag@usdoj.gov

                                          */s/ John R. Humphrey*
                                          John R. Humphrey, MO Bar NO. 34178
                                          KS FED DIST CT Bar NO. 78413
                                          Attorney for Defendant Steven Lavy
                                          121 West 63rd Street, Suite 201
                                          Kansas City, Missouri 64113
                                          jhumphrey79@hotmail.com
                                          PHN 816-333-2000
                                          FAX 816-817-0880