## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 17-20033-JAR** |
| **STEVEN D. LAVY,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Steven D. Lavy's Motion for Order Granting Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 57). Defendant moves for compassionate released based on his particular vulnerability to the current COVID-19 pandemic in conjunction with an outbreak at the facility where he is housed. The Government opposes Defendant's motion.[1] For the reasons provided below, Defendant's motion is granted.

## I. Background

On January 20, 2019, Defendant pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113 without a plea agreement. During the crime, Defendant wore a disheveled disguise and carried a pellet gun. He took $782 from a bank and was apprehended shortly thereafter. This Court sentenced Defendant to a 48-month term of imprisonment. Defendant is fifty-eight years old and his projected release date is November 17, 2020. He is currently housed at Forrest City Low FCI.

---

[1]Doc. 59.

During the sentencing hearing, Defendant presented evidence about his history with bipolar disorder in the form of an expert report describing the relationship between Defendant's illness and his criminal conduct.  Defendant also reportedly suffers from major depressive disorder.  The Court recognized Defendant's need for and willingness to receive mental health care while incarcerated and recommended that he be designated to the Bureau of Prisons ("BOP") medical facility in Springfield, Missouri.[2]  Defendant reports that there have been issues in receiving his medications as prescribed while incarcerated at Forrest City Low FCI, requiring intervention by counsel on at least one occasion.  In addition to his mental health conditions, Defendant has hypertension, for which he takes medication.

The BOP has a pandemic plan in place and is taking precautionary measures as it determines appropriate.  The Government describes its understanding of that plan as addressing "social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates."[3]  The Government represents that the BOP is currently following an influenza and pandemic plan adopted by the BOP in 2012.[4]  Though the Government states that the BOP has implemented Phase Five of the influenza and pandemic plan on April 1, 2020, it does not cite any materials in support of its assertion; nor does the Government provide any confirmation that Phase Five is in full effect at Forrest City Low FCI, where Defendant is housed.  Much of the information on the BOP's website regarding its COVID-19 response is either undated or was published in March, when the nature and understanding of COVID-19 was very different than it is at the time of this opinion.

---

[2]Doc. 54 at 2.

[3]Doc. 59 at 3.

[4]*See* Federal Bureau of Prisons: Health Services Division, *Pandemic Influenza Plan*, https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf (Oct. 2012).

Notwithstanding the BOP's efforts, some inmates in facilities nationwide have been infected with COVID-19, experiencing varying levels of illness.  The BOP reports 692 confirmed cases of COVID-19 at Forrest City Low FCI as of June 15, 2020—up from 382 confirmed cases as of May 29.[5]

Defendant asserts that his circumstances—the severe outbreak of COVID-19 and his underlying medical conditions that put him more at risk for a severe illness or death if he contracts the virus—present extraordinary and compelling reasons warranting compassionate release.  His proposed release plan is to travel with his brother from Forrest City Low FCI to Kansas City, Missouri, where he will reside with his sister.  Counsel also attests that he will assist Defendant with attending medical and psychiatric treatment appointments.[6]

## II.    Legal Standards

"[I]t is well-settled that '[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"[7]  Section 3582(c) permits a court to modify a term of imprisonment for compassionate release only if certain exceptions apply.  Until recently, these exceptions required the BOP to move on a defendant's behalf.  In 2018, however, the First Step Act modified the compassionate release statute, permitting a defendant to bring his own motion for relief.[8]  Since then, a defendant may bring a motion for compassionate release from custody only if he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his]

---

[5]Federal Bureau of Prisons, *COVID-19 Coronavirus: COVID-19 Cases*, https://www.bop.gov/coronavirus (last accessed June 15, 2020).

[6]Doc. 61.

[7]*United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell,* 81 F.3d 945, 947 (10th Cir. 1996)).

[8]First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ."[9]  Unless a defendant meets this exhaustion requirement, the court lacks jurisdiction to modify the sentence or grant relief.[10]

Where a defendant has satisfied the exhaustion requirement, a court may reduce the defendant's proposed sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the court determines: (1) "extraordinary and compelling reasons warrant such a reduction"; or (2)  "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) . . . and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community."[11]  In addition, a court must ensure that any reduction in a defendant's sentence under this statute is "consistent with applicable policy statements issued by the Sentencing Commission."[12]

The Sentencing Commission's policy statement pertaining to sentence reductions under 18 U.S.C. § 3582(c)(1)(A) is found at U.S.S.G. § 1B1.13.  The Sentencing Commission's comments to § 1B1.13 contemplate five categories of extraordinary, compelling circumstances: (1) the defendant is suffering from a terminal illness, i.e., a serious, advanced illness with an end-of-life trajectory; (2) the defendant is suffering from a serious physical or medical condition, serious function or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care

---

[9]18 U.S.C. § 3582(c)(1)(A).

[10]*United States v. Johnson*, 766 F. App'x 648, 650 (10th Cir. 2019) (holding that without an express statutory authorization, a court lacks jurisdiction to modify a sentence).

[11]18 U.S.C. § 3582(c)(1)(A).

[12]*Id.*; *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (holding the Sentencing Commission policy statement regarding 18 U.S.C. § 3582(c)(2) remains mandatory in the wake of *United States v. Booker*, 543 U.S. 220 (2005)).

within the environment of a correctional facility and from which the defendant is not expected to recover; (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten years or seventy-five percent of the term of imprisonment, whichever is less; (4) the defendant needs to serve as a caregiver for a minor child, spouse, or registered partner; and (5) other extraordinary and compelling reasons as determined by the Director of the BOP other than, or in combination with, the other four reasons.[13]

## III.    Discussion

### A.    Exhaustion

Defendant has satisfied the exhaustion requirement described in § 3582(c).  Defendant, through counsel, sent a letter to the Warden at Forrest City Low FCI on April 17, 2020 requesting compassionate release.[14]  To date, neither Defendant nor counsel for Defendant has received any response from the Warden.  The Government does not dispute that Defendant has satisfied the applicable exhaustion requirement.  Thus, because more than thirty days have passed since Defendant filed his request with the Warden, this Court has jurisdiction to decide Defendant's motion.[15]

### B.    Extraordinary and Compelling Reasons

Having determined Defendant exhausted his administrative remedies, the Court next turns to whether Defendant has demonstrated extraordinary and compelling reasons exist to warrant compassionate release.  Defendant argues that his medical conditions, in tandem with the

---

[13]U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (U.S. Sentencing Comm'n 2018).

[14]Doc. 57-1 at 2–4.

[15]*See United States v. Boyles*, No. 18-20092-JAR, 2020 WL 1819887, at *2 (D. Kan. Apr. 10, 2020) (holding that if a criminal defendant fails to meet the First Step Act's exhaustion requirement, the Court lacks jurisdiction over the motion).

ongoing COVID-19 pandemic, constitute extraordinary and compelling reasons warranting a

sentence reduction under § 3582(c)(1)(A).  The Government acknowledges that if an inmate has

a chronic medical condition that has been identified by the Centers for Disease Control and

Prevention ("CDC") as elevating the inmate's risk of becoming seriously ill from COVID-19,

that condition may satisfy the standard of "extraordinary and compelling reasons."  The

Government contends, however, that Defendant's hypertension is not a condition identified by

the CDC as increasing a person's risk for developing serious illness from COVID-19.

The policy statement found in § 1B1.13 and its commentary that arguably applies to

Defendant's circumstances is the second category regarding "serious physical or medical

condition" that "substantially diminishes [his] ability . . . to provide self-care within the

environment of a correctional facility and from which [he is] not expected to recover."[16]

Several courts have found that a reduction in sentence is consistent with this commentary

because "[c]onfined to a small cell where social distancing is impossible, [defendant] cannot

provide self-care because he cannot protect himself from the spread of a dangerous and highly

contagious virus."[17]

Several courts have found, however, that the catchall "other" category in § 1B1.13

"seems a better fit for a devastating pandemic that subjects particular individuals to grave

outcomes."[18]   On its face, that category applies only if the Director of the BOP seeks

---

[16]U.S. Sentencing Guidelines Manual § 1B1.13, cmt. n.1(A)(ii)(I) (U.S. Sentencing Comm'n 2018).

[17]*United States v. Perez*, No.  17 CR 513-3 (AT), 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020); *see also United States v. Al-Jumail*, No. 12-20272, 2020 WL 2395224, at *6 (E.D. Mich. May 12, 2020) (same); *United States v. Reddy*, No. 13-CR-20358, 2020 WL 2320093, at *7 (E.D. Mich. May 11, 2020) (same); *United States v Colvin*, No. 3:19CR179 (JBA), 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (same).

[18]*United States v. Jenkins*, No. 99-cr-00439-JLK-1, 2020 WL 2466911, at *5 (D. Colo. May 8, 2020); *United States v. Resnick*, No. 14 CR 810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020); *United States v. Gonzalez*, ---F. Supp. 3d---, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

compassionate release on a defendant's behalf.[19]   As Defendant notes, however, this policy statement has not been updated to account for the changes to § 3582(c)(1)(A) enacted through the First Step Act and is thus "now clearly outdated."[20]   Accordingly, "a growing consensus of courts across the country have concluded that, after the First Step Act, the Commission's policy statement 'does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'"[21]   In an unpublished opinion, Judge Marten recently joined the majority of district courts concluding that it has the authority to exercise the same discretion as the BOP when weighing a request for compassionate relief in a case that did not raise the risk of COVID-19, but where the defendant was over the age of 70 and had served over thirty year in prison on his convictions.[22]

The Court finds this authority persuasive—indeed, anything less than the same discretion as the Director of the BOP would be "antithetical to the First Step Act," and have "the perverse effect of *penalizing* prisoners who take advantage of the First Step Act's fast-track procedures and rewarding prisoners who endure the BOP-related delay that the Act sought to alleviate."[23] The Court joins the majority of courts finding that it has the authority to independently assess whether there are extraordinary and compelling reasons to reduce Defendant's sentence.[24] Therefore, the Court proceeds to ensure that its conclusions are consistent with the Sentencing

---

[19]U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(ii) (U.S. Sentencing Comm'n 2018).

[20]*United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020).

[21]*United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6 (W.D. Pa. May 29, 2020) (quoting *Rodriguez*, 2020 WL 1627331, at *3–4) (collecting cases).

[22]*United States v. Perez*, No. 88-10094-JTM (D. Kan. Mar. 11, 2020).

[23]*Somerville*, 2020 WL 2781585 at *7 (quoting *Rodriguez*, 2020 WL 1627331, at *5 (emphasis in original).

[24]*Id.* at *6; *Jenkins*, 2020 WL 2466911, at *5; *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[T]his court joins the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide [the defendant] with relief, even if his situation does not directly fall within the Sentencing Commission's current policy statement.").

Commission's policy statements but independently assesses whether Defendant presents

"extraordinary and compelling reasons" justifying a reduction in sentence.

### 1.      Defendant's Medical Conditions

The Court finds that Defendant has established such reasons to warrant compassionate

release under § 3582(c)(1)(A).  With respect to motions brought during the current pandemic,

"[c]ourts around the country have granted compassionate release where the defendant suffers

from a serious condition that increases the likelihood of severe consequences from COVID-

19."[25]  The Court is mindful that while "the mere presence of COVID-19 in a particular prison

cannot justify compassion release,"[26] "[m]ost, though not all, of the cases where compassionate

release has been granted also involv[e] some showing that COVID-19 is actually present, usually

to a significant degree, in the facility where the prisoner is incarcerated."[27]  By contrast, courts

often deny compassionate release motions "where prisoners articulate only generalized or

speculative fear about the risk of infection, without any showing of serious medical vulnerability

or uncontrolled exposure risk in the prison where they are held."[28]

Defendant has established that he suffers from medical conditions that make him

uniquely susceptible to serious illness or death if infected by COVID-19.  He is 58 years old and

---

[25]*Somerville*, 2020 WL 2781585, at *7 (collecting cases).

[26]*United States v. Seymon*, No. 11-10040, 2020 WL 2468762, at *4 (C.D. Ill. May 13, 2020).

[27] *Somerville*, 2020 WL 2781585, at *7; *see also United States v. Gorai*, No. 2:18-CR-220 JCM, 2020 WL 1975372, at *2 (D. Nev. Apr. 24, 2020) ("To make matters worse, defendant notes that '[o]n April 16, 2020, the count at Lompoc USP, now leading the BOP in inflicted inmates and staff, had 69 inmates and 22 staff testing positive.'  Even those numbers may be underrepresentative because only inmates with symptoms are tested."); *United States v. Cassidy*, No. 17-CR-116S, 2020 WL 2465078, at *7 (W.D.N.Y. May 13, 2020) ("Here, however, [the defendant] demonstrates more than just a general possibility that he could contract COVID-19. [ . . . ]  He demonstrates incarceration in a proven 'hotbed' facility that has numerous positive cases, including inmates with whom [the defendant] has shared quarters.").

[28]*Somerville*, 2020 WL 2781585, at *8 (citing *United States v. Canada*, No. 119-014, 2020 WL 2449344, at *1 (S.D. Ga. May 12, 2020); *United States v. Brooks*, No. 07-cr-20047-JES-DGB, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020); *United States v. Gagne*, ---F. Supp. 3d.---, 2020 WL 1640152, at *5 (D. Conn. Apr. 2, 2020)).

his medical records reflect he suffers from hypertension.  Data gathered by the CDC shows that individuals between 50 and 64 years old are hospitalized at a rate of three times that of younger adults.[29]  Moreover, there is no doubt that hypertension is a prevalent comorbidity in COVID-19 patients who suffer severe or fatal illnesses as a result of the virus.[30]  But the CDC has not yet determined whether hypertension alone renders an individual particularly vulnerable to severe illness stemming from COVID-19.[31]  The Court therefore considers Defendant's age and hypertension in connection with his two mental health diagnoses, bipolar disorder and major depressive disorder.

Throughout his motion, Defendant represents that his mental health disorders render him immunocompromised.  Defendant, however, fails to cite any sources that establish a link between either bipolar disorder or major depressive disorder and a suppressed immune system.  But the Government also fails to refute Defendant's conclusion.  Despite these omissions, the Court finds there is scientific support linking bipolar disorder and immune system dysfunction.[32]  And there is at least some indication that a substantial subset of individuals with major

---

[29]*COVIDView*, CDC (May 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (last visited June 15, 2020).

[30]JAMA Internal Medicine, *Risk Factors Associated with Acute Respiratory Distress Syndrome and Death in Patients with Coronavirus Disease 2019 Pnuemonia in Wuhan, China* (Mar. 13, 2020), https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/2763184  (in a study of 201 infected patients, 84 developed acute respiratory distress syndrome (ARDS), and of those 84 with ARDS, 23 had hypertension compared to just 16 of 117 with hypertension who did not develop ARDS); Lei Fang, George Karakiulakis, & Michael Roth, *Are Patients with Hypertension and Diabetes Mullitus at Increased Risk for COVID-19 Infection?* 8 THE LANCET 4 (Mar. 11, 2020), https://doi.org/10.1016/S2213-2600(20)30116-8 (concluding that the most frequent comorbidities of patients with COVID-19 were diabetes, hypertension, and cerebrovascular disease).

[31]CDC, *Clinical Questions about COVID-19: Questions and Answers, Patients with Hypertension*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension (last accessed June 15, 2020).

[32]Joshua D. Rosenblat & Roger S. McIntyre, *Bipolar Disorder and Immune Dysfunction: Epidemiological Findings, Proposed Pathophysiology and Clinical Implications*, NAT'L INST. OF HEALTH (Oct. 30, 2017), https://doi.org/10.3390/brainsci7110144.

depressive disorder and bipolar disorder exhibit atypical immune responses.[33]  Collectively, Defendant's age, hypertension, and mental health issues is enough to satisfy the Court that Defendant faces a heightened risk of serious illness or death if infected with COVID-19.

### 2.      Risk of Exposure at Forrest City Low FCI

The Court finds that Defendant has also established that he faces a serious risk of exposure to COVID-19 if he remains at Forrest City Low FCI, a facility that has experienced a drastic uptick in confirmed COVID-19 cases even since Defendant filed his motion for release. For instance, on April 15, 2020, BOP reported 55 inmates at Forrest City Low FCI had tested positive for COVID-19.[34]  By May 8, that number had increased to 243 confirmed cases.[35]  On May 29, the BOP reported 382 cases at Forrest Low FCI, which grew to 692 cases as of June 15. Although an increase in testing may account for some of the increase in confirmed cases, the Court finds Defendant's assertion that there is an "accelerating outbreak" of COVID-19 at Forrest City Low FCI credible.[36]  Thus, Defendant is housed at a facility with one of the highest concentrations of confirmed COVID-19 cases in the entire BOP system.[37]  Despite the Government's assurance that it has implemented a plan to protect inmates, the rate of infection indicates these measures have already failed to prevent transmission of the virus and belies any realistic hope for effective social distancing.

---

[33]Michael Maes & Andre F. Carvalho, *The Compensatory Immune-Regulatory Reflex System (CIRS) in Depression and Bipolar Disorder*, 55 MOLECULAR NEUROBIOLOGY 8885 (2018).

[34]Paige Cushman, *"It's Like Mad Max in Here": Arkansas Inmate Says Conditions Woeful Amid Outbreak*, KATV (Apr. 15, 2020), https://katv.com/news/local/its-like-mad-max-in-here-inmates-at-arkansas-prison-panic-amid-outbreak.

[35]Ninette Sosa, *Bureau of Prisons: Increases Inmate COVID-19 Testing*, KNWA Fox24 (May 8, 2020), https://www.nwahomepage.com/lifestyle/health/coronavirus/bureau-of-prisons-increases-inmate-covid-19-testing.

[36]Doc. 57 at 18.

[37]Ninette Sosa, *Arkansas' Federal Prison 1 of the Nation's Highest for COVID-19 Cases: CDC Finishes Testing FCI Inmates/Staff for COVID 19*, KNWA Fox24 (May 19, 2020), https://www.nwahomepage.com/lifestyle/health/coronavirus/arkansas-federal-prison-1-of-the-nations-highest-for-covid-19-cases.

For these reasons, the Court finds that the combination of the impact of Defendant's age, his mental health diagnoses on his immune system function, his hypertension, and the outbreak of COVID-19 at Forrest City Low FCI, demonstrate an extraordinary and compelling reason to reduce his sentence under § 3582(c)(1)(A).

### C.   Section 3553(a) Factors and Danger to the Community

The Court next considers whether Defendant's sentence reduction would comply with the sentencing factors enumerated in 18 U.S.C. § 3553(a) "to the extent that they are applicable."[38] That statute requires courts to "impose a sentence sufficient, but not greater than necessary" in consideration of the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.[39]

Though the Court considers all seven factors in making its determination, only a few warrant discussion. The Court notes Defendant has no prior criminal history. And while the

---

[38] 18 U.S.C. § 3582(c)(1).

[39] 18 U.S.C. § 3553(a).

Court recognizes Defendant's conduct was clearly unlawful, the Court is mindful that Defendant presented evidence at his sentencing that his actions stemmed from then-untreated mental illness. The Court also notes Defendant ultimately only took $782 from the bank he robbed.  Though he carried a pellet gun that may have frightened bystanders or witnesses to the crime, Defendant did not discharge the pellet gun during the offense, nor did he carry a more harmful weapon. Defendant has served approximately three and one-half years of his four-year term of imprisonment, and the Court does not believe requiring him to remain incarcerated for an additional five months would meaningfully advance the goals of sentencing, particularly in light of his current health conditions and the looming risk of severe illness resulting from COVID-19. The Court also finds Defendant does not pose a danger to the safety of other people or his community once released.  He has served the majority of his four-year sentence and will remain subject to a three-year term of supervised release.  The Court concludes that releasing Defendant now would leave him with a sentence that is "sufficient, but not greater than necessary," and would not put the community in danger.

The Court further finds that compassionate release in this case is consistent with the applicable policy statements issued by the Sentencing Commission.  At this juncture, the Sentencing Commission has not provided a policy statement regarding COVID-19, nor any updated policy statements regarding compassionate release since the First Step Act enabled criminal defendants to file motions on their own.  Throughout its analysis, the Court considered all relevant policy statements—including those set out in § 1B1.13 for motions filed by the BOP—and ensured that its conclusions were guided by those policy statements.  The Court therefore finds its decision to grant Defendant's motion is in accordance with all relevant policy statements.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Steven D. Lavy's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 57) is **GRANTED**.  Defendant's sentence of imprisonment is reduced to time served.

**IT IS FURTHER ORDERED** that the BOP shall immediately place Defendant in isolation or quarantine for a period **not to exceed 14 days**; thereafter, the BOP shall immediately release Defendant from Forrest City Low FCI.  Defendant's three-year term of supervised release shall begin immediately upon his release.

**IT IS SO ORDERED.**

Dated: June 15, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE